## JEAN BAPTISTE DE GRUY v. HIS CREDITORS.

Where a mortgage creditor of an insolvent having obtained judgment against the syndics, causes the mortgaged property to be sold, and purchases it himself at a price exceeding his claim, and re-sells it for cash, and his vendee is evicted on the ground of illegalities in the first sale, he cannot recover against the syndics, interest on his debt between the time of the purchase and the eviction of his vendee. The use of the land, or of the price received from his vendee, extinguished any claim for interest during that period.

Syndics are required by law to deposit funds received by them in some solvent bank, and to file a tableau, and distribute the money as soon as practicable; and where they wilfully delay to do so, and the funds depreciate, or are lost by their neglect,

or by the want of prudent foresight and observation as to the condition of the bank, they will be responsible for any loss sustained thereby.

APPEAL from the District Court of the First District, *Buchan-an*, J.

GARLAND, J.   In the year 1812, Jean Baptiste Degruy made a cession of his property to his creditors, and they appointed two syndics, who partially administered the estate surrendered. Several years after the cession, one of the syndics became insolvent, and the other left the State, an account of their administration having been rendered.   In the early part of the year 1818, Sosthene Roman and Marigny Dauterive were named syndics, the latter of whom died, a number of years after, neither of them having, so far as we are informed, taken any active measures to settle the estate confided to them.   In December, 1829, Roman, one of the syndics, presented his petition to the court below, in which he stated that his co-syndic was dead; that the power confided to them was joint; and that he was not authorized to proceed alone ; wherefore, he prayed for a meeting of the creditors to appoint another syndic.   The prayer was granted, and a meeting convened, at which no creditor appeared, but the mother of Mr. Roman, and himself, acting in his own right, and as the attorney in fact of another creditor.   He was named sole syndic, with authority "to cause, by all legal means, the property of the insolvent, which has been diverted from his estate, to return and be restored to the same, and to sell, under the authority of the court, all the property which has not yet been sold by the former syndics ; authorizing the said syndic to stipulate the terms and conditions of the sale, either for cash, in whole or in part, or at such terms of credit as he shall deem most convenient for the interest of the creditors."   Under this authority, the syndic commenced one or more suits to recover property ceded to the creditors, and took the necessary measures to procure a confirmation, by Congress, of certain unsettled land titles, in which he was successful.   In the spring of the year 1835, the curator of the estate of Thomas Durnford took a rule on the syndic, to show cause why he should not exhibit in court his bank-book, and why he should not proceed to sell the pro-

perty surrendered, and file a tableau of distribution.  A long
answer was filed to this rule, justifying the course pursued by
the syndic ; but upon the trial, the syndic was ordered to sell
the property, upon certain terms of credit, and, within a month
after the sale, to file a tableau of distribution.   The execution
of this order was arrested by an injunction obtained by De-
gruy, the insolvent, which finally resulted in a decree, dated in
March, 1837, ordering the syndic to sell the lands in the month
following, on a credit of one, two, three and four years, and the
slaves on certain terms therein mentioned, the proceeds of the
sale to be deposited in the Consolidated Association of the Plan-
ters of Louisiana, subject to the order of the court ; and it was
further ordered, that the syndic file a tableau of distribution
within one month after the sale.   A sale was made on the 24th
of April, 1837, amounting to about $37,000.   The land, on which
the opponents claim a mortgage, selling for more than $21,000,
one-fourth of which was payable in April, 1838, and the other
three-fourths in three annual instalments afterwards ; all of
which appear to have been paid, as was the price of all the
other property, except a sum of about $350.   The money was
deposited as ordered by the court ; but no tableau was filed as
ordered, nor any payments made to the creditors.   Finally, in
January, 1844, nearly seven years after the syndic was ordered
to file a tableau, and long after the money was collected, the
present opponents, as heirs of Durnford, were forced to take an-
other rule on the syndic, to compel him to file a tableau of dis-
tribution, which he did, accompanied by various explanations
to account for his delay, none of which are sustained by testi-
mony.   This tableau states the expenses of settling the estate to
be $9470, being about one-fourth of the whole proceeds of the
property sold.   It states that Durnford is a creditor for $3,000 ;
and further, that the funds on hand are the notes of the Consoli-
dated Association, which are much depreciated, in which he is
willing to pay the creditors, but that the opponents refuse to
take them.

    To the tableau of distribution so filed, the heirs of Durnford
made opposition on a variety of grounds, only two of which it

is necessary to notice, as all the others have been abandoned in this court.

The first ground is, that they ought to be placed on it as creditors for the sum of $3,800, with legal interest from the 23d of April, 1819, until paid, instead of for the sum of $3,000 alone.

Secondly, that they are not bound to receive the depreciated notes of the Consolidated Association, at par, in the payment of their debt, as the syndic has not used due and proper diligence in his administration, and the money has been lost or depreciated in consequence of the delay in filing the tableau, and in distributing the funds.

That the syndic was in error in placing the opponents on the tableau for only $3,000, there is not a doubt. On the *bilan* of the insolvent, filed in 1812, Durnford is placed as a creditor for $3,800, as being secured by mortgage on the Barrataria land. An authentic act of mortgage is produced, and also a judgment against the syndics, rendered in the year 1819, for that sum, with legal interest from the 23d of April of that year, and an order made that the land be sold to pay the same. The land was sold, under an order of seizure and sale issued on this judgment, on the 7th of August, 1820, and purchased by Durnford, through the agency of his counsel. On the 10th of October, 1823, Durnford sold the land to McDonogh for $4,000 cash, or its equivalent, from whom it was recovered by the present syndic of Degruy, by a suit commenced on the 18th of March, 1830, in the District Court, and finally decided in this court on the 2d day of the month of July, in the year 1831. The ground of the eviction, was the illegality and irregularity of the sale made under the judgment rendered in 1819. See *De Gruy's Syndic* v. *Hennen*, 2 La. 544.

The evidence in relation to the deposit of the money in the bank is, that in the spring of 1838, one-fourth of the proceeds of the land and one-third of the price of the slaves was paid, and deposited as directed by the court. In 1839 a like sum was paid, and deposited. In 1840, the same; and in 1841 the remaining fourth, with the exception of a note for $345, and interest, which is considered good. On the 21st May, 1841, the syndic had to his credit in the bank a sum exceeding $28,000,

and had had large sums there since the years 1838 and 1839, more than sufficient to pay the debt due to the opponents; yet he did not pay them, nor file any tableau. On the 16th of August, 1842, the balance to the credit of the syndic was $25,857 15. On the 18th of the same month he drew a check for that sum, which was paid to him in the notes of the Consolidated Association. These he put in a tin box, locked up and, as appears by an entry on his private pass or bank-book, he deposited it on the same day in that institution, as a special deposit. The box remained there until the 18th of November, 1842, when it was withdrawn, and as appears by the private bank-book of Mr. Roman with the Louisiana State Bank, it was, on the 18th of November 1842, deposited there, where it remained until a short time before the trial. Previous to the 18th of August, 1842, the Consolidated Bank had suspended specie payments, and its notes on that day were below par. The reason given for drawing the check and putting the notes in the box, and making a special deposit of them, was, that it was feared the bank would be put into liquidation under the law of February, 1842, and every thing be sequestered; and the removal of the box, on the 18th of November, 1842, was to prevent its being sequestered, with the other assets of the Bank.

The District Court ordered the tableau to be amended, so as to put the opponents on it for the sum of $3,800, with legal interest from the 23d of April, 1819, and also ordered them to be paid in specie, or its equivalent. From this judgment the syndic has appealed.

That the court below was correct in amending the tableau, by increasing the principal debt to $3,800, we have no doubt. The evidence as stated makes it clear, and a reference to the answer of the appellant to the petition of Degruy, filed in 1836, shows that he so stated it himself. In the allowance of interest, during the whole period from the 23d of April, 1819, until payment, we think the court erred. From the evidence before us, it appears that, on the 7th of August, 1820, Durnford had the land sold under his judgment rendered in 1819, and bought it himself for $5,100, which more than paid his debt. He never paid the excess of the price. Sometime after, he sold it to

McDonogh for cash, who, as we have seen, was subsequently evicted. We do not think it just or legal that Durnford, or his heirs, should recover interest on the judgment in his favor, during the time he and his vendee possessed the land. The use of it, and of the $4,000 received from McDonogh, extinguished the interest from the time of the sheriff's sale to the date of eviction, when the estate of Durnford, it is supposed, became liable on the warranty. The judgment of the District Court must, therefore, be in this respect amended.

We are of opinion that the court below did not err, in declining to order the opponents to receive the depreciated notes of the Consolidated Association, and in condemning the syndic to pay them in specie, or its equivalent. In the case of *Mandeville and another* v. *Arnoult, Executor, ante p.* 447, we said, we felt disposed to go as far as we could legally and constitutionally, in protecting a faithful and diligent fiduciary against unforeseen losses and liabilities, which he could not avert by prudent and discreet management; but that, when the losses occur from the unnecessary delay of the agent or trustee, he must be responsible for them. The law makes it the duty of syndics to deposit the funds they receive in some solvent bank; it also makes it their duty to file a tableau, and distribute the money as soon as practicable. If they wilfully delay doing that which the law requires and the court has ordered, and the funds become depreciated, or lost by neglect, or the want of a prudent foresight and observation as to the condition of the bank, they must sustain the damage. In this case the syndic was ordered by the court to file his tableau, in May, 1837; he did not do so, until January, 1844, when he did it under another order of court, obtained by a creditor whose just demands had been unsatisfied for many years, when there were sufficient funds, to pay them. In the spring of 1838, or at the farthest, in 1839, there were in the hands of the syndic sufficient funds, arising from the sale of the mortgaged land, to have paid the debt due to the opponents, or their ancestors. At that time, the notes of the bank in question were considered as good as those of any other institution. It has paid specie for its notes since then, but the syndic has taken no pains to procure it, but suffered the fund to lie

Board v. Pritchard.

idle for years, benefiting no one but the Bank, until the notes again became greatly depreciated.

It is, therefore, ordered and decreed, that the judgment of the District Court, so far as it amends the tableau by placing the opponents on it for the sum of three thousand eight hundred dollars, and ordering the same and the interest to be paid in specie, or its equivalent, be affirmed; but that so far as it relates to the interest, the judgment be annulled and reversed; and that the opponents recover interest on the aforesaid sum of $3,800, at the rate of five per cent per annum, from the 23d of April, 1819, until the 7th day of August, 1820, and also interest on the aforesaid sum at the same rate, from the 2d day of July, in the year 1831, until paid; the appellees paying the costs of this appeal.

*D. Seghers* for the appellant.

*Elmore, W. W. King,* and *Grymes,* for the opponents.